## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ZCM ASSET HOLDING COMPANY (BERMUDA) LIMITED, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MARTIN JAMES ALLAMIAN, *et al.*, | ) ) |
| Defendants. | ) ) |
| JOHN H. WALDOCK, solely as Trustee of the JOHN H. WALDOCK TRUST U/A/D 12/1/88, *et. al.*, | ) ) ) |
| Counterclaimants/Cross-Claimants, | ) ) |
| v. | ) ) |
| ZURICH CAPITAL MARKETS, INC., *et al.*, | ) ) |
| Counter-defendants, and | ) ) ) |
| M.J. DIVERSIFIED FUND, L.P., *et. al.*, | ) ) |
| Cross-defendants. | ) ) |

No. 01 C 6250

Hon. Amy St. Eve

**DOCKETED**
FEB 0 4 2003

**FILED**

**FEB 0 3 2003**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

### NOTICE OF FILING

TO:    See Attached Service List

PLEASE TAKE NOTICE that on the 3rd day of February, 2003, the undersigned caused to be filed with the Clerk of the Court for the United States District Court, Northern District, Eastern Division, the **Reply Memorandum Relating to Payment of Attorneys Fees to Ross & Hardies,** dated February 3, 2003, a true and correct copy of which is hereby served upon you via facsimile and U.S. Mail, proper postage pre-paid.

\32914\00001\CH240973.DOC-1

*301*

Dated:  February 3, 2003

Respectfully submitted,

ROSS & HARDIES

By: _____

Michael A. Chabraja

Michael A. Chabraja
Tammy L. Adkins
Samantha C. Gordon
ROSS & HARDIES
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
(312) 558-1000

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ZCM ASSET HOLDING COMPANY (BERMUDA) LIMITED, et. al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| MARTIN JAMES ALLAMIAN, et. al. | ) ) | |
| Defendants. | ) ) ) | Case No. 01 C 6250 |
| | ) | Honorable Amy J. St. Eve |
| JOHN H. WALDOCK, solely as Trustee of the JOHN H. WALDOCK TRUST U/A/D 12/1/88, et al. | ) ) ) ) | |
| Counterclaimants/Cross-Claimants, | ) ) ) | |
| v. | ) ) ) | |
| ZURICH CAPITAL MARKETS INC., et al., | ) ) | |
| Counter-defendants, | ) ) ) | |
| M.J. DIVERSIFIED FUND, L.P., et al, | ) ) | |
| Cross-defendants. | ) ) | |

DOCKETED
FEB 0 4 2003

**FILED**

FEB 0 3 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## REPLY MEMORANDUM RELATING TO PAYMENT OF ATTORNEYS' FEES TO ROSS & HARDIES

Michael A. Chabraja, an attorney with the law firm of Ross & Hardies, in his capacity as counsel for Defendants Martin Allamian, Martin James Capital Management, Inc., and Asset Allocation Fund, L.P., (the "Allamian Defendants"), states as follows in reply to the Intervenors' Memorandum Relating to Payment of Attorneys' Fees to Ross & Hardies:

301

## DISCUSSION

Although Intervenors make a menagerie of disconnected arguments in support of their position that Ross & Hardies must return fees paid for professional services rendered, at its core, Intervenors' memorandum does not cite any authority that is even moderately analogous to the situation before this Court. Therefore, it does not, as requested, inform the Court as to its authority to seek the return of those fees. See Transcript of proceedings held on January 8, 2003 at p. 92.

Intervenors largely ignore (and simply dismiss as "unavailing") the cases in this Circuit which acknowledge that the Court may permit attorneys' fees to be paid out of frozen funds in order for the party to fund its defense. These cases are clearly on point, and show that if a proper request had been made (a request which Ross & Hardies would have made had it known the client did not have resources at its disposal other than the frozen assets), the Court would have had the discretion to release the frozen funds in order to pay for the legal defense of this action. FTC v. Amy's Travel Service, Inc., 875 F.2d 564 (7th Cir. 1989) (modifying injunction order to permit attorneys' fees); FTC v. Windermere Big Win International, Inc., No. 98 C 8066, 1999 WL 608715 (N.D. Ill. Aug. 5, 1999) (finding defendants could petition for interim payments for attorneys' fees); FTC v. Think Achievement Corp., 144 F. Supp. 2d 1013, 1022 (N.D. Ind. 2000) (granting interim payment of attorneys' fees from frozen assets). None of the parties have contested that the professional services for which Ross & Hardies was paid were legitimate and proper. Thus, the Court's discretion to permit disbursement should be taken into account in considering the issue before the Court.

Instead of squarely addressing the cases in this district relating to receipt and/or return of attorneys' fees, Intervenors have asked the Court to consider two lines of cases which are unrelated to the issues before it and are therefore not instructive.

2

First, Intervenors attempt to persuade the Court that Ross & Hardies' knowledge and intent is irrelevant by citing to several civil contempt cases. The cases cited are inapposite for the obvious reason that the issue presented in this case is not whether Ross & Hardies acted in contempt of the PI Order. Indeed, the Court has already held a contempt hearing with respect to Martin Allamian and ruled that he was in fact in civil contempt of the PI Order. Rather, the Court has asked the parties to address the question of what authority it has to order the return of attorneys' fees paid to Ross & Hardies that are ultimately traceable to the frozen funds. The Intervenors' arguments are also unavailing because all of the cases cited by Intervenors involve civil contempt charges against the enjoined *defendant*.[1] Intervenors do not cite to any cases in which the recipient of fees or payments from frozen assets is held in civil contempt, nor do they cite to authority that is otherwise analogous to the present situation.

Second, Intervenors cite to cases in which an attorney is held to have violated Rule 65 by actively aiding and abetting the enjoined party in violating the terms of a preliminary injunction. Ross & Hardies does not dispute that an injunction is binding on a party's attorneys under Rule 65(d) of the Federal Rules of Civil Procedure. However, Intervenors' bald assertion that Ross & Hardies is "legally identified" with Martin Allamian under Rule 65(d) and "therefore subject to the remedy of disgorgement" is unavailing. Neither of the cases cited by the Intervenors that involve actions taken by attorneys support their argument that Ross & Hardies must return the

---

[1] Intervenors cited to the following cases, none of which shed any light on the issue before the Court because they relate to the actual enjoined party's lack of compliance or active violation of a court order: McComb v. Jacksonville Paper Co., 336 U.S. 187 (1948) (finding enjoined party had actively violated the injunction decree relating to its accounting and payroll policies); Jordan v. Arnold, 472 F. Supp. 265 (M.D. Pa. 1979) (prison warden in contempt of injunction order imposed against him and prison); West Texas Utilities Co. v. National Labor Relations Board, 206 F.2d 442 (D. D.C. 1953) (employer in contempt for violation of court decree regarding its labor practices); CFTC v. Premex, Inc., 655 F.2d 779 (7th Cir. 1980) (defendants in contempt for violation of consent judgment of permanent injunction); Halderman v. Pennhurst State School and Hospital, 526 F. Supp. 414 (E.D. Pa. 1981) (contempt at issue where defendants failed to comply with order regarding its state school living arrangements and treatment of residents).

3

fees it has received in this matter. In <u>Cottman v. Transmission Systems, Inc. v. Metro Distributing, Inc.</u>, 1996 WL 41608 (E.D. Pa. 1996), the defendants' attorney was held in civil contempt for directly violating the Court's preliminary injunction order. The Court determined that the attorney deliberately undertook numerous actions designed to delay or impede the implementation of the preliminary injunction order. Id. at *3-4. In <u>Georgine v. Amchem Products, Inc.</u>, 1995 WL 422792 (E.D. Pa. 1995), the Court held defendants' attorney in civil contempt of a preliminary injunction order based on findings that the attorney "assisted, aided, abetted, and acted" with defendants in violating the preliminary injunction. Id. at *8-9.

Neither <u>Cottman</u> nor <u>Georgine</u> involve the receipt of fees or address the issue at hand - whether Intervenors have a basis for their demand that Ross & Hardies return $350,000 in fees paid to it for its services in this matter. Further, both cases are factually distinguishable. <u>Cottman</u> and <u>Georgine</u> both address the propriety of holding a defendant's attorney in civil contempt of a preliminary injunction order where there is a specific finding that the attorney directly violated the order or assisted the defendant in carrying out acts that are prohibited under the order. Ross & Hardies is not accused of directly violating the PI Order or of assisting Martin Allamian in carrying out acts prohibited under the PI Order. For this reason, Intervenors' reliance on these cases is misplaced and highly inappropriate.[2]

In a confusing twist, Intervenors additionally argue that "the seriousness of the dispute" with respect to the funds in issue somehow requires that Ross & Hardies return $350,000 in fees that it has received from Martin Allamian in this matter. The Court found Martin Allamian in

[2] Intevenors' reliance on <u>Regal Knitwear Co. v. National Labor Relations Board</u>, 324 U.S. 9, 65 S.Ct. 478 (1945) and <u>State of Illinois v. United States Dept. of Health and Human Services</u>, 772 F.2d 329 (7th Cir. 1985) is similarly misplaced. Both cases stand for the general proposition that a defendant may not nullify a decree by carrying out prohibited acts through aiders and abettors who are not parties to the original proceeding. As discussed above, Intervenors do not assert that Martin Allamian acted through Ross & Hardies in redeeming the subject fund investments or disbursing the funds located at Harris Bank.

4

contempt of the PI Order for, among other things, making unauthorized disbursements of the fund redemptions in the amount of approximately $420,000. See Transcript of Proceedings held on January 8, 2003 at p. 90. Contrary to Intervenors' contention, there is absolutely no dispute as to the ownership of the $420,000 that Martin Allamian caused to be transferred. Per the terms of the settlement agreement entered into between ZCM and the Allamian defendants, the $420,000 was to remain with Asset Allocation. Although the Intervenors, as a result of their limited partnership interests in Asset Allocation, claim a right to a portion of the $420,000, this does not change the fact that the funds belonged to Asset Allocation. Thus, notwithstanding Intervenors' arm-waving, no "serious dispute" exists as to the ownership of the $420,000 in issue. Thus, Intervenors' reliance on case law prohibiting a defendant from using the "funds of others" to pay for attorneys' fees is misplaced.

In further support of their demand that Ross & Hardies return the fees paid to it for its bona fide professional services rendered in this matter, Intervenors go so far as to suggest that Ross & Hardies has a conflict of interest under Local Rule 83.51.7(b). Intervenors' attempt to obfuscate the issue at hand by asserting the possibility of a conflict of interest is improper and absolutely without merit. The responsibility for resolving a conflict of interest lies with the attorney undertaking the representation. Intervenors have not come forward with any facts which **clearly call into question** the fair or efficient administration of justice and, thus, do not even have standing to raise the conflict.[3]

---

[3] The self serving nature of Intervenors' conflict of interest argument is evidenced by its assertion that "disgorgement by Ross & Hardies......will likely change the complexion of the conflict question and perhaps eliminate it." Intervenors do not even consider whether a conflict will exist in the event the Court requires Ross & Hardies to return the fees it has received in connection with this matter.

5

## CONCLUSION

Intervenors have not come forward with any analogous authority indicating that the return of the payments Ross & Hardies received that are traceable to the assets under freeze is warranted, nor have they come forward with a compelling argument for why the Court must do so at any rate. As Ross & Hardies explained in its Opening Memorandum, it had no knowledge, nor any reason to know, that the payments it received had their origins in the frozen assets. Moreover, the payments were for legitimate professional services rendered. Under the circumstances, the Court should not order disgorgement of the fees paid to Ross & Hardies for its services rendered in this matter.

Dated: February 3, 2003

Respectfully submitted,

ROSS & HARDIES

_Michael A. Chabraja_

Michael A. Chabraja
ROSS & HARDIES
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
(312) 558-1000

6

## CERTIFICATE OF SERVICE

Michael A. Chabraja, an attorney, states under oath that he served a copy of **Reply Memorandum Relating to Payment of Attorneys Fees to Ross & Hardies,** upon the individuals listed on the attached Service List, by facsimile and U.S. Mail (unless otherwise noted), proper postage pre-paid on this 3rd day of February 2003.

_____
Michael A. Chabraja

## SERVICE LIST

Constantine John Gekas, Esq.
Alenna K. Bolin, Esq.
Gekas & Associates, Ltd.
11 South LaSalle Street
Suite 1020
Chicago, Illinois 60603

David P. Sanders, Esq.
Chadwick O. Brooker, Esq.
Jenner & Block
45th Floor
One IBM Plaza
Chicago, IL 60611

Alan B. Vickery, Esq.
Philippe Z. Selendy, Esq.
Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, New York 10022

Courtney R. Rockett, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Suite 110
Armonk, NY 10504

# SEE CASE FILE FOR EXHIBITS