## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ZCM ASSET HOLDING COMPANY (BERMUDA) )
LIMITED, *et al.,* )
            )
        Plaintiffs, )
            )
        v. )
            )
MARTIN JAMES ALLAMIAN, *et al.,* )
            )
        Defendants. )
_____ )
JOHN H. WALDOCK, solely as Trustee of the JOHN H. )   No. 01 C 6250
WALDOCK TRUST U/A/D 12/1/88, *et. al.,* )
            )   Hon. Amy St. Eve
        Counterclaimants/Cross-Claimants, )
            )
        v. )
            )
ZURICH CAPITAL MARKETS, INC., *et al.,* )
            )
        Counter-defendants, )
and )
            )
M.J. DIVERSIFIED FUND, L.P., *et. al.,* )
            )
        Cross-defendants. )

*DOCKETED MAR 0 3 2003*

*FILED FEB 28 2003 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT*

## NOTICE OF FILING

TO:   See Attached Service List

      PLEASE TAKE NOTICE that on the 28th day of February, 2003, the undersigned

caused to be filed with the Clerk of the Court for the United States District Court, Northern

District, Eastern Division, **Ross & Hardies' Petition for Attorneys' Fees and the Declaration**

**of Michael A. Chabraja**, a true and correct copy of which is hereby served upon you via U.S.

Mail, proper postage pre-paid.



Dated: February 28, 2003

Respectfully submitted,

ROSS & HARDIES

By: _____
       Michael A. Chabraja

Michael A. Chabraja
Tammy L. Adkins
Samantha C. Gordon
ROSS & HARDIES
150 North Michigan Avenue, Suite 2500
Chicago, Illinois 60601
(312) 558-1000

## SERVICE LIST

Constantine John Gekas, Esq.
Alenna K. Bolin, Esq.
Gekas & Associates, Ltd.
11 South LaSalle Street
Suite 1020
Chicago, Illinois 60603

David P. Sanders, Esq.
Chadwick O. Brooker, Esq.
Jenner & Block
45th Floor
One IBM Plaza
Chicago, IL  60611

Alan B. Vickery, Esq.
Philippe Z. Selendy, Esq.
Boies, Schiller & Flexner LLP
570 Lexington Avenue
New York, New York 10022

Courtney R. Rockett, Esq.
Boies, Schiller & Flexner LLP
333 Main Street
Suite 110
Armonk, NY  10504

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ZCM ASSET HOLDING COMPANY (BERMUDA) LIMITED, et. al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| MARTIN JAMES ALLAMIAN, et. al. | ) | |
| Defendants. | ) | Case No. 01 C 6250 |
| | ) | Honorable Amy J. St. Eve |
| JOHN H. WALDOCK, solely as Trustee of the JOHN H. WALDOCK TRUST U/A/D 12/1/88, et al. | ) | |
| Counterclaimants/Cross-Claimants, | ) | |
| v. | ) | |
| ZURICH CAPITAL MARKETS INC., et al., | ) | |
| Counter-defendants, | ) | |
| M.J. DIVERSIFIED FUND, L.P., et al, | ) | |
| Cross-defendants. | ) | |

## ROSS & HARDIES' PETITION FOR ATTORNEYS' FEES

Petitioner, Ross & Hardies, by undersigned counsel, respectfully petitions for an award of attorneys' fees and costs in the amount of $350,000 in the present action. In support of this petition, the following is stated:

### FACTUAL BACKGROUND

1. In August 2001, Martin James Capital Management, Inc. ("MJCM"), the general partner of Asset Allocation Fund, L.P. ("Asset Allocation"), retained Ross & Hardies to defend

\32914\00001\CH355132.DOC-1

Asset Allocation, MJCM, Martin Allamian, Andrew Allamian, James Manning, Robert Paszkiet, Jean Manning, M.J. Diversified Fund, L.P. ("MJD") and M.J. Financial Arbitrage, L.P. ("MJFA"), in the present lawsuit brought by plaintiffs ZCM Asset Holding Company (Bermuda) Limited, Zurich Capital Markets, Inc., ZCM Matched Funding Corp. and ZCM Asset Holding Company LLC (collectively referred to herein as "ZCM"). MJCM, Asset Allocation's general partner, agreed to pay Ross & Hardies' reasonable and customary rates for time expended and to reimburse Ross & Hardies for necessary expenses incurred in connection with the defense of this matter. See Declaration of Michael A. Chabraja ("Chabraja Decl.") at ¶¶ 4-5.

2.     Asset Allocation is an Illinois Limited Partnership that, at all times relevant hereto, operated as an investment pool. MJCM is the general partner of Asset Allocation and the former general partner of MJD and MJFA. Martin Allamian is the President and sole owner of MJCM. James Manning, MJCM's former Senior Vice President, and Robert Paszkiet, MJCM's former Director of Client Relations, were both responsible for raising equity to be invested in Asset Allocation.

3.     This lawsuit arises directly out of an ISDA Master Agreement and Transaction Confirmation (collectively referred to herein as the "Option Agreement") entered into between Asset Allocation and one of the ZCM entities on May 31, 2000. Martin Allamian, in connection with his role as President of MJCM, negotiated the agreement on behalf of Asset Allocation. The Option Agreement was an extremely complex investment vehicle pursuant to which ZCM agreed to provide capital to leverage Asset Allocation's investments in certain securities by approximately 2:1. ZCM sold Asset Allocation a call option, which gave Asset Allocation the right to acquire the notional value of a specified "Reference Portfolio" in exchange for payment

of a defined "Strike Price." The Reference Portfolio included, among other investments, holdings in MJD and MJFA, limited partnerships managed by MJCM.[1]

4.     ZCM instituted this action in August 2002 based upon actions taken by the parties pursuant to the Option Agreement, including but not limited to, alleged representations that were made and actions that were taken with respect to MJD, MJFA and M.J. Select, securities that were included in the Reference Portfolio. The fact that the Option Agreement is central to ZCM's claims is clearly evidenced by the relief sought by ZCM: recovery of the redemption proceeds from MJD and MJFA, both of which were investments in the Reference Portfolio (See Second Amended Complaint ("SAC") at ¶¶93-94, subparas. f and n); recovery under federal and state securities laws and common law claims for fraud and conspiracy to defraud based on alleged misrepresentations made concerning the Reference Portfolio investments (SAC at ¶¶ 88-120, 161-197); recovery of the strike price and for breach of the Option Agreement (SAC at ¶¶ 226-244); indemnification under the Option Agreement (SAC at ¶¶ 211-217); and recovery under theories of conversion and constructive trust on proceeds of redemptions from holdings in the Option Agreement Reference Portfolio (SAC at ¶¶ 142-160, 218-225).

## SCOPE OF THE PETITION

5.     In 2002, Ross & Hardies received a total of $350,000 from Martin Allamian, President of MJCM, for professional services rendered and necessary costs incurred in this matter. On June 20, 2002, Ross & Hardies received an official bank check issued by Harris Banks in the amount of $50,000. See Declaration of Michael T. Hoffman dated January 22, 2003 ("Hoffman Decl.") at ¶ 8. On September 13, 2002, Ross & Hardies received an official

---

[1]  MJD, formerly an Illinois Limited Partnership, and MJFA, formerly a Nevada Limited Partnership, were both dissolved in or about September, 2001. See Preliminary Injunction Order at ¶ 5.

bank check issued by Harris Banks in the amount of $200,000. Hoffman Decl. at ¶ 9. Finally, on December 24, 2002, Ross & Hardies received an official bank check in the amount of $100,000. Hoffman Decl. at ¶ 10. Martin Allamian was listed as the remitter for all three checks. Hoffman Decl. at ¶¶ 8-10.

6.      During the course of the proceedings on the Intervenors' Motion for Rule to Show Cause, it became apparent that the funds received by Ross & Hardies in 2002 for its professional services rendered and costs incurred are ultimately traceable to investments held by Asset Allocation that were under freeze pursuant to the Preliminary Injunction Order ("PI Order") entered in this action in October 2002. Consequently, on February 5, 2003, the Court directed Ross & Hardies to submit a fee petition for the $350,000 in payments that it received in 2002. See Tr. of Proceedings held on February 5, 2003 at p. 216.

7.      The $350,000 in payments received by Ross & Hardies in 2002 were for professional services rendered and necessary expenses incurred from October 1, 2001 through July 31, 2002. See Invoice Nos. 20928[2], 22116, 22445, 23076, 23829, 24277, 24918, 25570 and 26458, attached hereto as Group Exhibit A.[3]

8.      Ross & Hardies received two payments from Martin Allamian in December 2001. See Hoffman Decl. at ¶ 6. Both of the payments made in December 2001 were for professional services rendered and costs incurred in August and September 2001. See Chabraja Decl. at ¶ 7.

---

[2]   Invoice No. 20928 contains four time entries from August and September 2002 that were not captured in the invoice issued by Ross & Hardies for services rendered and costs incurred through September 30, 2002. The four entries, which include 8.6 attorney hours and 1.10 staff hours, are included within the scope of this petition.

[3]   The invoices have been modified insofar as the descriptions of the time entries have been removed. In light of the fact that the time descriptions contain information protected from disclosure under the attorney-client and work-product doctrine, and that this action is still pending, Ross & Hardies does not believe it is appropriate to produce the descriptions. However, Ross & Hardies will make the time entry descriptions available to the Court for an *in camera* inspection in the event the Court so desires.

These payments, which total $113,090.32, were made from Martin Allamian's personal checking account and are not within the scope of this petition. Id. The work performed during this time frame included the extensive briefing in connection with ZCM's Motion for Preliminary Injunction, the preparation of written responses and production of documents pursuant to ZCM's written discovery directed to Asset Allocation and MJCM, preparation for and attendance at the deposition of Martin Allamian (4 days), James Manning, Robert Paszkiet and Andrew Allamian, as well as attendance at numerous hearings before Judge Lindberg. Id.

9.      Ross & Hardies has not been paid for services rendered and costs incurred after July 31, 2002.  The balance due Ross & Hardies for professional services rendered and costs incurred in connection with the defense of this action from August 1, 2002 through January 31, 2003 is $173,806.11.  Chabraja Decl. at ¶ 8.

**SUMMARY OF PROFESSIONAL SERVICES RENDERED AND COSTS
INCURRED FROM OCTOBER 1, 2001 THROUGH JULY 31, 2002**

10.      From October 1, 2001 through July 31, 2002, six attorneys worked on this case billing a total of 1,390.50 hours.[4]  The following number of hours were billed by each attorney:

| Attorney | No. of Hours Billed |
|---|---|
| Michael A. Chabraja | 717.00 |
| Tammy L. Adkins | 381.10 |
| Samantha C. Gordon | 208.50 |
| Lynn M. Geerdes | 69.40 |
| Colleen Young | 12.00 |
| Lawrence R. Samuels | 2.50 |
| **TOTAL:** | **1390.50** |

---

[4]    See Group Ex. A, Chabraja Decl. at ¶ 10.

5

11.     The time value of the hours billed by Ross & Hardies attorneys in connection with the defense of this matter from October 1, 2001 through July 31, 2002 is $308,274.00. The fees attributable to each attorney are as follows:

| Attorney | Total Fees |
|---|---|
| Michael A. Chabraja | $181,100.00 |
| Tammy L. Adkins | $76,478.00 |
| Samantha C. Gordon | $34,302.50 |
| Lynn M. Geerdes | $13,186.00 |
| Colleen Young | $2,220.00 |
| Lawrence R. Samuels | $887.50 |
| **TOTAL:** | **$308,274.00**[5] |

12.     The hourly rates charged for each attorney who provided services on this matter and the periods in which they worked were as follows:

| Attorney | Hourly Rate 10/01 - 5/02 | Hourly Rate 6/02 - 7/02 |
|---|---|---|
| Michael A. Chabraja | $250 | $270 |
| Tammy L. Adkins | $200 | $220 |
| Samantha C. Gordon | $165 | -- |
| Lynn M. Geerdes | $190 | -- |
| Colleen Young | $185 | -- |
| Lawrence R. Samuels | $355 | -- |

A summary sheet of the time expended by each attorney is attached as Exhibit B.

---

5   See Group Ex. A, Chabraja Decl. at ¶¶ 11-12.

13.   All of the hourly rates listed above were those rates charged to, and paid by, all clients on the dates they were in effect and were within the range of rates charged in the Chicago market at that time.  The hourly rates set forth were reasonable and consistent with customary litigation billing practices in the Chicago metropolitan legal community.  Chabraja Decl. at ¶ 13.

14.   All hours worked on the case reflect the distinct contribution of each lawyer and do not represent duplication of effort.  Chabraja Decl. at ¶ 15.

15.   In addition to time billed by attorneys from October 1, 2001 through July 31, 2002, a total of 39.10 hours were expended by paralegals, reference librarians, or members of the firm's docket department.  The time value of the hours expended by these employees is $4,427.50.  A summary of these charges is set forth below:

| Name | Hours | Rate | Total Fees |
|---|---|---|---|
| Lawrence Corridon (paralegal) | 32.60 | $120 | $3,912.00 |
| Michella Parker (docket) | 3.2 | $65 | $208.00 |
| Todd Brittain (reference librarian) | .80 | $110 | $88.00 |
| Hobart Anthony (docket) | .80 | $65 | $52.00 |
| Nancy Johnson (paralegal) | .70 | $125 | $87.50 |
| Elizabeth Dill (reference librarian) | .60 | $90 | $54.00 |
| Michael Augle (docket) | .40 | $65 | $26.00 |
| **TOTAL:** | | | **$4,427.50** |

See Summary Sheet of Time Expended by Non-Legal Personnel, attached as Exhibit C. See also Group Exhibit A.

16.     All of the hourly rates for paralegals, reference librarians and members of the docket department were those rates charged to, and paid by, all clients on the dates they were in effect and were within the range of rates charged in the Chicago market at that time. The hourly rates set forth for staff members were reasonable and consistent with customary litigation billing practices in the Chicago metropolitan legal community. Chabraja Decl. at ¶ 13.

17.     In addition to attorney and staff time, Ross & Hardies incurred necessary expenses in the amount of $41,614.43 from October 1, 2001 through July 31, 2002 in connection with the defense of this matter. See Group Exhibit A. A summary of those expenses is set forth below:

| | |
|---|---:|
| Westlaw/Lexis research charges[6] | $30,923.90 |
| In-house photocopy charges | $5,972.20 |
| Outside photocopy charges (IKON, Joel Bush) | $3,049.57 |
| Court reporter services | $771.25 |
| Messenger service charges | $431.19 |
| Telecopier charges (Fax) | $293.37 |
| Telephone charges | $92.43 |
| Local transportation charges | $76.25 |
| Pacer account charges | $4.27 |
| **TOTAL:** | **$41,614.43** |

---

[6]   The sum for Westlaw and Lexis includes charges incurred from August 20, 2001 through September 30, 2001. The Westlaw and Lexis charges for this time period were not available when Ross & Hardies issued its invoice for services rendered and costs incurred through September 30, 2001.

## ROSS & HARDIES' PETITION FOR FEES AND COSTS IS REASONABLE

18.     The above-stated value of the professional services rendered and costs incurred by Ross & Hardies in this matter is reasonable given the education and experience of the attorneys involved, the difficult nature of the litigation, the complexity of the legal issues, and the ability of Ross & Hardies to narrow the issues involved so as to allow for the successful negotiation of a settlement with ZCM.

19.     The three complaints filed by ZCM demonstrate the size and complexity of this action.  ZCM's Initial Complaint was 38 pages long (314 pages with exhibits) and contained 138 paragraphs of allegations.   The Complaint purported to state 9 claims against Asset Allocation, MJCM, Martin Allamian and/or certain other individuals and partnerships related to Asset Allocation.  On behalf of its clients, Ross & Hardies filed a Motion to Dismiss Counts I (Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5) and II (Illinois Securities Law of 1953) of the Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) as well as a Motion to Dismiss for Failure to Join an Indispensable Party under Fed. R. Civ. P. 19. Subsequent to the filing of these motions, ZCM received leave to file an amended complaint.

20.     ZCM's Amended Complaint, filed on October 9, 2001, consisted of 110 pages and 293 paragraphs of allegations.  The Amended Complaint purported to state 14 claims against Asset Allocation, MJCM, Martin Allamian and/or certain other individuals and partnerships related to Asset Allocation.  In November 2001, Ross & Hardies, on behalf of its clients, moved to dismiss Count I (Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5) of ZCM's pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the remainder of the Amended Complaint for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Ross & Hardies also prepared and filed a Motion to Dismiss Asset Allocation, Andrew Allamian, James Manning, Jean Manning and Robert Paszkiet pursuant to Fed. R. Civ. P. 12(b)(6).

21.     On December 18, 2001, Judge Lindberg entered a Memorandum Opinion and Order granting the Defendants' Motion to Dismiss Count I of ZCM's Amended Complaint and allowing ZCM leave to file a Second Amended Complaint. See Memorandum Order dated December 18, 2001.

22.     ZCM's Second Amended Complaint, filed on January 7, 2002, is 95 pages long and contains 275 paragraphs of allegations. The Second Amended Complaint purports to state 14 claims against Asset Allocation, MJCM, Martin Allamian, and/or certain individuals and partnerships related to Asset Allocation. On behalf of its clients, Ross & Hardies filed a Motion to Dismiss Count I (Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5) pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the remainder of the complaint for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Ross & Hardies also moved to dismiss ZCM's Second Amended Complaint as to Asset Allocation pursuant to Fed. R. Civ. P. 12(b)(6).

23.     On May 9, 2002, Judge Lindberg dismissed Count I of ZCM's Second Amended Complaint with prejudice. ZCM and Asset Allocation subsequently agreed to suspend further briefing with respect to Asset Allocation's Motion to Dismiss in order to concentrate on settlement negotiations. See Memorandum Order dated May 9, 2002.

24.     Beginning in March 2002 and continuing through November 2002, Michael A. Chabraja of Ross & Hardies participated in extensive settlement negotiations with counsel for ZCM. See Chabraja Decl. at ¶ 22. As a result of these extensive negotiations, ZCM and Ross & Hardies' clients entered into a settlement agreement which is dated November 19, 2002. Id. In exchange for the transfer to ZCM of $2 million under the management of Asset Allocation, ZCM

agreed, in essence, to settle over $17 million in potential claims against Ross & Hardies' clients. Id.

25.     In addition to the activities set forth above, attorneys at Ross & Hardies also expended significant hours in connection with the following from October 1, 2001 through July 31, 2002:  (a) attendance at numerous court hearings before Judge Lindberg; (b) document production and related investigation in connection with written discovery served by ZCM; (c) preparation of supplemental written responses to ZCM's interrogatories and document requests; (d) resolution of discovery disputes with counsel for ZCM; (e) review and analysis of documents produced by ZCM and Oceanic; (f) preparation for and attendance at the depositions of Michael Coglianese (2 days), Gina Coglianese, Richard Yasak, Jeff Vorisek, Jack Landau, and John Mastrangelli; and (g) preparation for and attendance at court-ordered mediation.

26.     Given the size and complexity of this action, as well as Ross & Hardies' zealous representation of its clients, Ross & Hardies submits that its petition for fees and costs is particularly reasonable and urges the Court to grant its petition and allow it to retain the $350,000 it has been paid as compensation for its time and effort.

## THE COURT HAS DISCRETION TO ALLOW PAYMENT OF REASONABLE ATTORNEYS' FEES AND EXPENSES FROM FROZEN ASSETS

27.     Courts in this Circuit have allowed the payment of reasonable attorneys' fees out of frozen assets. See Federal Trade Commission v. Amy's Travel Service, Inc., 875 F.2d 564, 570, 575-76 (trial court modified asset freeze to allow for reasonable attorneys' fees and expenses); Federal Trade Commission v. Windermere Big Win International, Inc., No. 98 C 8066, 1999 W.L. 608715 (N.D. Ill. Aug. 5, 1999) (finding defendants could petition for interim payments for attorneys' fees from frozen assets); Federal Trade Commission v. World

Travel Vacation Brokers, Inc., 861 F.2d 1020, 1031-32 (7th Cir. 1988) (court has discretion to allow payment of reasonable attorneys' fees out of frozen assets).

28.     Further, while injunctions may be enforced by contempt proceedings, damage actions, or actions to enforce a penalty included within an injunctive order, injunctions do not automatically operate to void a transfer they prohibit in any suit by a protected party against the transferee.  Davis v. Prudential Ins. Co. of America, 331 F.2d 346, 349-50 (5th Cir. 1964). Pursuant to the authority listed above, this Court has discretion to allow Ross & Hardies to retain the fees paid to it in 2002 in connection with this matter.

## ASSET ALLOCATION'S OFFERING DOCUMENTS AUTHORIZE THE PAYMENT OF ATTORNEYS' FEES

29.     It is undisputed that Intervenors are Limited Partners in Asset Allocation who chose not to redeem their investments after the discovery of the Six Sigma fraud.   The Intervenors' investments are therefore governed by Asset Allocation's Offering Documents.

30.     Asset Allocation's Private Placement Memorandum provides that the Fund "will pay" on-going legal expenses.  See Asset Allocation Private Placement Memorandum at p. 2, attached hereto as Exhibit D.  Asset Allocation's Limited Partnership Agreement provides that the partnership "shall be obligated to pay all liabilities incurred by it."  See Asset Allocation Limited Partnership Agreement at p. A-4, attached hereto as Exhibit D.

31.     Section 10 of the Limited Partnership Agreement provides that a partner may elect to redeem any or all of his partnership units "at its Net Asset Value per unit."  The Net Asset Value of the partnership is defined in the Agreement as the difference between the value of the assets of the partnership and the amount of liabilities of the partnership.  See Ex. D, Section 8.  The Net Asset Value per unit is calculated by dividing the Net Asset Value of partnership by the number of partnership units outstanding.  Id.  Thus, it is clear from the

Offering Documents that Intervenors are not entitled to redeem their partnership units until the liabilities of the partnership, which include attorneys' fees, have been paid.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Ross & Hardies respectfully requests that this Court grant its Petition for Fees and Costs in the amount of $350,000 or, alternatively, in an amount deemed appropriate in its discretion.


Dated: February 28, 2003

Respectfully submitted,

ROSS & HARDIES


Michael A. Chabraja
Tammy L. Adkins
ROSS & HARDIES
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
(312) 558-1000

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ZCM ASSET HOLDING COMPANY (BERMUDA) LIMITED, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| MARTIN JAMES ALLAMIAN, *et al.*, | ) ) |
| Defendants. | ) ) |
| JOHN H. WALDOCK, solely as Trustee of the JOHN H. WALDOCK TRUST U/A/D 12/1/88, *et. al.*, | )  No. 01 C 6250 ) )  Hon. Amy St. Eve |
| Counterclaimants/Cross-Claimants, | ) ) |
| v. | ) ) |
| ZURICH CAPITAL MARKETS, INC., *et al.*, | ) ) |
| Counter-defendants, | ) ) |
| And | ) ) |
| M.J. DIVERSIFIED FUND, L.P., *et. al.*, | ) ) |
| Cross-defendants. | ) |

FILED

FEB 2 8 2003

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DECLARATION OF MICHAEL A. CHABRAJA

I, Michael A. Chabraja, declare as follows:

1.    The information set forth in this declaration is based upon my personal knowledge.

2.    I am currently a partner with the law firm of Ross & Hardies. I have been admitted to practice law in the State of Illinois since 1992.

3.      I am one of the attorneys representing Asset Allocation Fund, L.P. ("Asset Allocation"), its general partner, and certain individuals and other partnerships that are related to Asset Allocation, in the above-captioned case.

4.      In August 2001, Martin James Capital Management, Inc. ("MJCM"), the general partner of Asset Allocation, retained Ross & Hardies to defend Asset Allocation, MJCM, Martin Allamian, Andrew Allamian, James Manning, Robert Paszkiet, Jean Manning, M.J. Diversified Fund, L.P. ("MJD") and M.J. Financial Arbitrage L.P. ("MJFA") in the present lawsuit brought by plaintiffs, ZCM Asset Holding Company (Bermuda) Limited, Zurich Capital Markets, Inc., ZCM Matched Funding, Corp. and ZCM Asset Holding Company LLC (collectively referred to herein as "ZCM").

5.      MJCM, Asset Allocation's general partner, agreed to pay Ross & Hardies' reasonable and customary rates for professional services rendered and to reimburse Ross & Hardies for necessary expenses incurred in connection with the defense of this matter. At all times relevant hereto, I have been the attorney primarily responsible for the handling of this matter. I have personally reviewed all invoices for professional services and costs incurred that are the subject of Ross & Hardies' Petition for Attorneys' Fees.

6.      Ross & Hardies received $350,000 from Martin Allamian in 2002 in connection with this action. The payments Ross & Hardies received in 2002 were for professional services rendered and necessary costs incurred from October 1, 2001 through July 31, 2002. The invoices for services rendered and costs incurred from October 1, 2001 through July 31, 2002 are Nos. 20928, 22116, 22445, 23076, 23829, 24277, 24918, 25570 and 26458.

7.      In December 2001, Ross & Hardies received a total of $113,090.32 from Martin Allamian for professional services rendered in connection with this matter in August and

September 2001. The work performed during this time frame included the extensive briefing in connection with ZCM's Motion for Preliminary Injunction, the preparation of written responses and production of documents pursuant to ZCM's written discovery directed to Asset Allocation and MJCM, preparation for and attendance at the depositions of Martin Allamian (4 days), James Manning, Robert Paszkiet and Andrew Allamian, as well as attendance at numerous hearings before Judge Lindberg. The payments received by Ross & Hardies from Martin Allamian in December 2001 are not at issue and, accordingly, are not included within the scope of this petition for fees.

8.     Ross & Hardies has not been compensated for services rendered and costs incurred in connection with the defense of this matter after July 31, 2002. The outstanding balance for professional services rendered and costs incurred in this matter from August 1, 2002 through January 31, 2003 is $173,806.11.

9.     The following attorneys worked on this case from October 1, 2001 through July 31, 2002:   Michael A. Chabraja; Tammy L. Adkins; Samantha C. Gordon; Lynn M. Geerdes; Colleen Young; and Lawrence R. Samuels. In addition to the attorneys identified above, the following employees also worked on this case during the timeframe relevant to this petition:   Lawrence M. Corridon (paralegal); Nancy A. Johnson (paralegal); Todd Brittain (Senior Reference Librarian); Elizabeth Dill (Reference Librarian); Michael Augle (docket department); Michella Parker (docket department); and Hobart Anthony (docket department).

10.     From October 1, 2001 through July 31, 2002, a total of 1,390.50 hours were billed by attorneys at Ross & Hardies in connection with the defense of this action. The following number of hours were billed by each attorney:

| Attorney | No. of Hours Billed |
|---|---|
| Michael A. Chabraja | 717.00 |
| Tammy L. Adkins | 381.10 |
| Samantha C. Gordon | 208.50 |
| Lynn M. Geerdes | 69.40 |
| Colleen Young | 12.00 |
| Lawrence R. Samuels | 2.50 |
| **TOTAL:** | **1390.50** |

11.     The time value of the hours billed by Ross & Hardies attorneys in connection with this matter from October 1, 2001 through July 31, 2002 is $308,274.00. Set forth below is a summary of each attorney's billing rate(s), the number of hours billed at each rate, and the fees attributable to each attorney:

**October 1, 2001 - May 31, 2002**

| Attorney | Hours | Rate | Total Fees |
|---|---|---|---|
| Michael A. Chabraja | 624.50 | $250 | $156,125.00 |
| Tammy L. Adkins | 368.20 | $200 | $73,640.00 |
| Samantha C. Gordon | 208.50 | $165 | $34,402.50 |
| Lynn M. Geerdes | 69.40 | $190 | $13,186.00 |
| Colleen Young | 12.00 | $185 | $2,220.00 |
| Lawrence R. Samuels | 2.50 | $355 | $887.50 |
| **TOTAL:** | | | **$280,461.00** |

4

**June 1, 2002 - July 31, 2002**

| Attorney | Hours | Rate | Total Fees |
|----------|-------|------|------------|
| Michael A. Chabraja | 92.50 | $270.00 | $24,975.00 |
| Tammy L. Adkins | 12.90 | $220.00 | $2,838.00 |
| **TOTAL:** | | | **$27,813.00** |
| **TOTAL TIME VALUE:** | | | **$308,274.00** |

12.    From October 1, 2001 through July 31, 2002, a total of 39.10 hours were expended by paralegals, reference librarians, or members of the firm's docket department.  The time value of the hours entered by Ross & Hardies' non-legal personnel is $4,427.50.  A summary of these charges is set forth below:

| Name | Hours | Rate | Total Fees |
|------|-------|------|------------|
| Lawrence Corridon | 32.60 | $120 | $3,912.00 |
| Michella Parker | 3.20 | $65 | $208.00 |
| Todd Brittain | .80 | $110 | $88.00 |
| Hobart Anthony | .80 | $65 | $52.00 |
| Nancy Johnson | .70 | $125 | $87.50 |
| Elizabeth Dill | .60 | $90 | $54.00 |
| Michael Augle | .40 | $65 | $26.00 |
| **TOTAL:** | | | **$4,427.50** |

13.    All of the hourly rates listed above in paragraphs 11 and 12 were those rates charged to, and paid by, all clients of Ross & Hardies on the dates they were in effect and were within the range of rates charged in the Chicago market at that time.  The hourly rates set forth

were reasonable and consistent with customary litigation billing practices in the Chicago metropolitan legal community.

14. From October 1, 2001 through July 31, 2002, Ross & Hardies incurred necessary expenses in the amount of $41,614.43 in connection with the defense of this matter. A summary of these expenses is set forth below:

| | |
|---|---|
| Westlaw/Lexis research charges[1] | $30,923.90 |
| In-house photocopy charges | $5,972.20 |
| Outside photocopy charges (IKON, Joel Bush) | $3,049.57 |
| Court reporter services | $771.25 |
| Messenger service charges | $431.19 |
| Telecopier charges (Fax) | $293.37 |
| Telephone charges | $92.43 |
| Local transportation charges | $76.25 |
| Pacer account charges | $4.27 |
| **TOTAL:** | **$41,614.43** |

15. I personally edited all bills before they were sent to Asset Allocation's general partner, MJCM, for payment. It is my practice to remove time charged to the client for work performed which may have taken longer than what was reasonable or which duplicated another attorney's efforts. Consequently, the invoices that were sent to MJCM in this matter reflect a reasonable and appropriate amount of time for the work performed in connection with this case.

---

[1] Invoice No. 20928 includes Westlaw and Lexis research from August 20, 2001 through July 31, 2002. The Westlaw and Lexis charges were not available when Ross & Hardies issued its invoice for services rendered and costs incurred through September 30, 2001.

16. The difficult nature of this action, coupled with the complexity of the legal questions involved, provide support for Ross & Hardies' Petition for Attorneys' Fees. This lawsuit arises out of an ISDA Master Agreement and Transaction Confirmation (collectively, the "Option Agreement"), entered into between Asset Allocation and one of the ZCM entities on May 31, 2000. The Option Agreement was an extremely complex investment vehicle pursuant to which ZCM agreed to provide capital to leverage Asset Allocation's investments in certain securities by approximately 2:1. ZCM sold Asset Allocation a call option, which gave Asset Allocation the right to acquire, at the end of the option term, the notional value of the specified "Reference Portfolio" in exchange for payment of a defined "Strike Price." This lawsuit is based upon actions taken by the parties pursuant to the Option Agreement, including but not limited to, alleged representations that were made and actions that were taken with respect to the selection and redemption, among other things, of the securities that were included in the Reference Portfolio.

17. ZCM's Initial Complaint, filed on August 14, 2001, was 38 pages long (314 pages with exhibits) and contained 138 paragraphs of allegations. The Complaint purported to state 9 claims against Asset Allocation, MJCM, Martin Allamian, and/or certain other individuals and partnerships related to Asset Allocation. Ross & Hardies, on behalf of its clients, filed a Motion to Dismiss Counts I (Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5) and II (Illinois Securities Law of 1953) of the Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) as well as a Motion to Dismiss for Failure to Join an Indispensable Party Under Fed. R. Civ. P. 19. Subsequent to the filing of these motions, ZCM received leave to file an amended complaint.

18. ZCM filed its Amended Complaint, which consisted of 110 pages and 293 paragraphs of allegations, on October 9, 2001. ZCM's Amended Complaint purported to state 14 claims against Asset Allocation, MJCM, Martin Allamian, and/or certain other individuals and partnerships related to Asset Allocation. In November 2001, Ross & Hardies, on behalf of its clients, moved to dismiss Count I (Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5) of ZCM's Amended Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the remainder of the amended complaint for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Ross & Hardies also prepared and filed a motion to dismiss Asset Allocation, Andrew Allamian, James Manning, Jean Manning and Robert Paszkiet pursuant to Fed. R. Civ. P. 12(b)(6).

19. On December 18, 2001, Judge Lindberg entered a Memorandum Opinion and Order granting the Defendants' Motion to Dismiss Count I of ZCM's Amended Complaint and allowing ZCM leave to file a Second Amended Complaint.

20. ZCM's Second Amended Complaint, filed on January 7, 2002, is 95 pages long and contains 275 paragraphs of allegations. The Second Amended Complaint purports to state 14 claims against Asset Allocation, MJCM, Martin Allamian, and/or certain individuals and partnerships related to Asset Allocation. On behalf its clients, Ross & Hardies filed a Motion to Dismiss Count I (Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5) pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) and the remainder of the complaint for lack of federal subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Ross & Hardies also moved to dismiss ZCM's Second Amended Complaint as to Asset Allocation pursuant to Fed. R. Civ. P. 12(b)(6).

21.     On May 9, 2002, Judge Lindberg dismissed Count I of ZCM's Second Amended Complaint with prejudice.  ZCM and Asset Allocation subsequently agreed to suspend further briefing with respect to Asset Allocation's Motion to Dismiss the Second Amended Complaint in order to concentrate on settlement negotiations.

22.     Beginning in March 2002 and continuing through November 2002, I participated in extensive settlement negotiations with counsel for ZCM.  As a result of these negotiations, ZCM and my clients entered into a settlement agreement which is dated November 19, 2002.  In exchange for the transfer to ZCM of $2 million under the management of Asset Allocation, ZCM agreed, in essence, to settle over $17 million in potential claims against Ross & Hardies' clients.

23.     In addition to the attorney time expended in connection with the settlement negotiations, the preparation of motions to dismiss the complaints filed by ZCM and extensive legal research related thereto, attorneys at Ross & Hardies expended significant hours in connection with the following from October 1, 2001 through May 31, 2002:  (a) attendance at numerous hearings before Judge Lindberg; (b) document production and related investigation in connection with written discovery served by ZCM; (c) preparation of supplemental written responses to ZCM's written discovery; (d) resolution of discovery disputes with counsel for ZCM; (e) review and analysis of documents produced by ZCM and Oceanic; (f) preparation for and attendance at the depositions of Michael Coglianese (2 days), Gina Coglianese, Richard Yasak, Jeff Vorisek, Jack Landau, and John Mastrangelli; and (g) preparation for and attendance at court-ordered mediation.

24.     In light of the fact that this action is still pending, the descriptions of the time entries entered by attorneys at Ross & Hardies are not included in the petition or the invoices that are attached to the petition as Group Exhibit A.  The descriptions that accompany the time

entries contain information protected from disclosure pursuant to the attorney-client privilege and work-product doctrine. For this reason, Ross & Hardies does not believe it is appropriate to include the time entry descriptions. In the event the Court would like to review the time descriptions, Ross & Hardies will make the invoices available for an *in camera* inspection.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of February, 2003.

_____
Michael A. Chabraja

10

# SEE CASE FILE FOR EXHIBITS